UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RON SHEA and ROBERT KELLY, individually and on behalf of all others similarly situated, | | |
| Plaintiffs, | | |
| v. | | CAUSE NO. 3:21-CV-86 DRL-MGG |
| GENERAL MOTORS LLC, | | |
| Defendant. | | |

OPINION & ORDER

Ron Shea and Robert Kelly each purchased vehicles manufactured by General Motors LLC and fitted with Generation IV Vortec engines. They claim their engines consume an excessive amount of oil—what they call an "oil consumption defect." They sue GM for violations of the Indiana Deceptive Consumer Sales Act (IDCSA), breach of express warranty, breach of implied warranty of merchantability, fraudulent omissions, unjust enrichment, and violations of the Magnuson-Moss Warranty Act (MMWA). GM moves to dismiss all claims. The court grants the motion.

BACKGROUND

These facts emerge from the well-pleaded factual allegations in the complaint. The court must accept them as true for purposes of deciding the motion today.

Ron Shea purchased a 2013 GMC Sierra equipped with a Generation IV Vortec 5300 engine from Expressway Chevrolet Buick GMC in Mount Vernon, Indiana on January 26, 2013 [ECF 1 ¶ 33]. Mr. Shea noticed his 2013 Sierra was consuming excessive amounts of oil when there were approximately 40,000 miles on the odometer [*id.* ¶ 35].

Mr. Shea is a mechanic with over 30 years of experience [*id.*]. He regularly checks the oil and adds more when needed [*id.*]. Now, with over 104,385 miles on the vehicle, it remains three quarts

low between oil changes [*id.*]. Mr. Shea says he didn't receive any notification regarding the oil consumption defect before purchasing the vehicle [*id.* ¶¶ 36-37]. Had he known about this problem, he wouldn't have purchased the 2013 Sierra, or he at least would have paid less for it [*id.* ¶ 39].

Robert Kelly purchased a used 2012 Chevrolet Suburban equipped with a Generation IV Vortec 5300 engine from Basney Honda in Mishawaka, Indiana on September 5, 2018 [*id.* ¶ 26]. In September 2020, while Mr. Kelly's wife was driving the vehicle, she began to notice the lack of acceleration [*id.* ¶ 27]. When she stopped at a red light, the vehicle began to rock [*id.*]. The rocking became more violent, and the engine light came on [*id.*]. She drove the vehicle to a nearby grocery store parking lot; the engine died, and she left the vehicle overnight [*id.*].

The next day, Mr. Kelly drove the vehicle to the Gurley Leep Buick GMC dealership a couple of blocks away [*id.*]. On September 25, 2020, Gurley Leep mechanics disassembled the engine and concluded that the engine's lifters and camshaft were drastically worn [*id.* ¶ 28]. At no time prior to the engine failure did the vehicle's low-oil light come on [*id.*]. Mr. Kelly alleges engine failure and wear to the components such as the lifter and camshaft are caused by excessive oil consumption [*id.*]. He says he didn't receive any notification regarding the oil consumption defect before purchasing the vehicle [*id.* ¶¶ 29-30]. Like Mr. Shea, had he known about the problem, he wouldn't have purchased the 2012 Chevrolet Suburban, or he at least would have paid less for it [*id.* ¶ 31].

On June 8, 2009, GM acquired the assets of General Motors Corporation, referred to as "old GM" [*id.* ¶ 6]. For model years 2010-2014, GM continued manufacturing and selling Chevrolet and GMC vehicles equipped with the Generation IV Vortec 5300 engines [*id.*]. According to the complaint, the piston rings within these engines fail to keep oil in the crankcase [*id.* ¶ 8].

These two vehicle owners also claim that the systems within these engines contribute to the excessive oil consumption defect [*id.* ¶¶ 9-10]. The Oil Life Monitoring System in GM vehicles with these engines doesn't advise drivers of insufficient oil in their vehicles until the oil level is critically

2

low [*id.* ¶ 11]. The oil pressure gauge in these vehicles doesn't indicate when the oil pressure is low enough to damage internally lubricated parts or cause engine failure [*id.* ¶ 13]. The oil canister symbol doesn't illuminate until well past time when the vehicles are critically oil starved [*id.*].

The two owners allege that the oil consumption defect can damage critical engine components and cause drivability problems, such as lack of power from misfire, spark plug fouling, excessive engine noise, abnormal vibration or shaking, piston cracking, head cracking, and ultimately, engine seizure [*id.* ¶ 15]. These problems could potentially cause the engine to catch fire or the vehicle to unexpectedly shut down [*id.* ¶¶ 94-95]. Beginning with certain of its model year 2014 vehicles, GM scrapped the Generation IV Vortec 5300 engine and replaced it with the Generation V Vortec 5300 engine, which was redesigned to fix this problem [*id.* ¶ 17].

## STANDARD

In reviewing the motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Generally, if a party attaches evidence outside the pleadings in a motion to dismiss, "the court must either convert [the motion] into a motion for summary judgment under Rule 56 . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12." *188 LLC v. Trinity*

3

*Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). There is a narrow exception: a dismissal motion can rest on critical documents, central to the claim and referred to in the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *188 LLC*, 300 F.3d at 735. This allowance permits the court to consider GM's written warranty. *See Levenstein*, 164 F.3d at 347.

## DISCUSSION

The court (sitting in diversity) applies Indiana's choice of law rules. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996). Both sides cite Indiana law; and, given no reason to depart from this choice, the court follows. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004).

A. *Express Warranty.*

The vehicle owners claim that GM breached its limited warranty. The limited warranty "covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period" [ECF 18-1 at 4]. They say GM breached this warranty because the oil consumption defect is a uniform "design defect" related to "materials." GM says its warranty doesn't cover design defects.

In deciding whether the warranty covers the alleged defect, the court reviews the limited warranty as a whole, attempting to construe the warranty's language "so as not to render any words, phrases, or terms ineffective or meaningless." *B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 827 (Ind. Ct. App. 2017) (citation omitted). The construction of a written warranty is "generally a question of law for the trial court, not a question of fact," unless the terms are ambiguous. *Midwestern Indem. Co. v. Leffler Constr. Co., Inc.*, 463 N.E.2d 1130, 1133 (Ind. Ct. App. 1984).

Though "no Indiana court has defined the terms 'defects in material or workmanship' or 'design defect,' case law from outside Indiana reflects an understanding that defects in material and

4

workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself." *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013). This court has previously held that a warranty covering "materials" or "workmanship" omits coverage for design defects. *See Smith v. Nexus RVs, LLC*, 468 F. Supp.3d 1012, 1021-22 (N.D. Ind. 2020). The plain language of GM's warranty leaves that conclusion undisturbed.

This view proves consistent with several other courts who likewise have found this warranty to cover defects in materials and workmanship but not design defects—thereby excluding the oil consumption defect. *See Sloan v. General Motors LLC*, 2017 U.S. Dist. LEXIS 120851, 29 (N.D. Cal. Aug. 1, 2017) ("overwhelming weight of state law authority holds that design defects are *not* covered under similar warranties"); *Harris v. General Motors LLC*, 2020 U.S. Dist. LEXIS 160429, 6 (W.D. Wash. Sept. 2, 2020) (concluding that "GM's limited warranty does not cover the alleged design defect"); *Szep v. General Motors LLC*, 491 F. Supp.3d 280, 292 (N.D. Ohio 2020) ("GM's limited warranty does not cover design defects"); *see also Martell v. General Motors LLC*, 492 F. Supp.3d 1131, 1141 (D. Or. 2020) (finding "no persuasive and authoritative analysis suggesting that the phrase 'materials or workmanship' should be read to include design defects" without deciding the issue).

The owners nonetheless argue that, without a comma separating "vehicle" from "related to materials or workmanship," the limited warranty covers any vehicle defect (including design defects), with the exceptions of "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period" [ECF 18-1 at 4]. In other words, they read "related to materials or workmanship" to apply only to the exceptions, not to the warranty's coverage. Their position isn't without support. *See Martell v. General Motors LLC*, 2021 U.S. Dist. LEXIS 87903, 16-28 (D. Or. May 7, 2021) (denying motion to dismiss express warranty claim); *Weiss v. General Motors LLC*, 418 F. Supp.3d 1173, 1182 (S.D. Fla. 2019) (same); *McKee v. General Motors LLC*, 376 F. Supp.3d 751, 757 (E.D. Mich. 2019) (same and distinguishing cases deciding that GM's limited

5

warranty excludes design defects from its coverage). Given this split of authority, and the reasonable interpretations the cases reflect, this provision proves ambiguous. Because any ambiguity in a contract must be construed against the drafter, *see MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004), the court won't favor GM's interpretation of the warranty and dismiss the express warranty claims on this basis.

That said, to proceed on their express warranty claims, the owners must show they sought and were denied repairs during the warranty term. *See Popham v. Keystone RV Co.*, 2016 U.S. Dist. LEXIS 127093, 13 (N.D. Ind. Sept. 19, 2016) ("When breach of an express warranty occurs is a straightforward analysis: it must occur, if it is to occur at all, before the express warranty ends."). Mr. Kelly admits he didn't purchase his vehicle until after the expiration of the express warranty [ECF 1 ¶ 26], and Mr. Shea doesn't allege that he ever sought or was denied repairs by GM during the warranty term. The owners seem to concede these points but say GM has failed to address their allegation that the limited repair remedy failed its essential purpose.

When a limited remedy fails its essential purpose, a claimant is entitled to all remedies available to him under the commercial code. Ind. Code § 26-1-2-719(2); *see Rheem Mfg. Co. v. Phelps Heating & Air. Conditioning, Inc.*, 746 N.E.2d 941, 947 (Ind. 2001). There are few situations when a remedy can fail of its essential purpose. *Rheem*, 746 N.E.2d at 954. A limited remedy fails its essential purpose when application of the remedy will not further the warranty's purpose. *Cimino v. Fleetwood Enters.*, 542 F. Supp.2d 869, 887 (N.D. Ind. 2008) (citing *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1085 (Ind. 1993)). A limited remedy doesn't fail its essential purpose merely because the defects aren't discovered until after the warranty period expires. *See Popham*, 2016 U.S. Dist. LEXIS 127093 at 21 ("the root cause [of the alleged defect] is immaterial because the defect was discovered and brought to the Defendant's attention after the one-year Limited Warranty expired"); *Wis. Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1412 (7th Cir. 1987) (applying Wisconsin law) ("A purchaser

6

cannot claim that a warranty provision has failed of its essential purpose merely because a potential claim does not arise until after the warranty period has expired.").

The plaintiffs concede that the oil consumption defect was present at the time of sale, but they say they couldn't have known to take their vehicles in for repair during the warranty period because the vehicles suffered from a defect that was only going to get progressively worse. This isn't really an argument that the limited remedy failed its essential purpose, but instead a complaint that the warranty period wasn't long enough. That doesn't make the limited remedy fail its essential purpose. *See Popham*, 2016 U.S. Dist. LEXIS 127093 at 21; *Wis. Power*, 830 F.2d at 1412. A limited remedy fails when its application "operates to deprive either party of the substantial value of the bargain." *Rheem*, 746 N.E.2d at 955 (quoting Ind. Code § 26-1-2-719 cmt. 1). The bargain here was only for a five-year warranty period.

A remedy fails its essential purpose when "a seller limits a buyer's exclusive remedy to repair or replacement and then incompetently repairs or replaces the defective good[.]" *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 379 n.3 (Ind. 2019). The vehicle owners really offer but a hypothetical—that if they had sought repairs during the warranty period, GM wouldn't have repaired the defect. The court decides only actual controversies, not hypotheticals. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). These owners never presented their vehicles to GM for repair; by definition, they cannot claim a remedy failed when they never sought the remedy. *See Zylstra v. DRV, LLC*, 8 F.4th 597, 601-02 (7th Cir. 2021); *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019). The court dismisses their express warranty claims.

    B.    *Implied Warranty of Merchantability.*

Mr. Shea and Mr. Kelly claim that GM breached the implied warranty of merchantability. Under Indiana law, "a warranty that the goods shall be merchantable is implied in a contract for their

sale[.]" Ind. Code § 26-1-2-314(1). For goods to be merchantable, they must at least "pass without objection in the trade under the contract description" and be "fit for the ordinary purposes for which such goods are used[.]" Ind. Code § 26-1-2-314(2). "The ordinary purpose of a privately owned vehicle is to provide transportation." *Sharp v. Tom Wood East, Inc.*, 822 N.E.2d 173, 175 (Ind. Ct. App. 2004). Whether a product is merchantable is often a question of fact. *See Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F. Supp.2d 869, 880 (N.D. Ind. 1999). The law imposes this obligation to protect the buyer and liberally construes the protection in his favor. *See Frantz v. Cantrell*, 711 N.E.2d 856, 859 (Ind. Ct. App. 1999).

GM says these vehicles were merchantable as a matter of law because the owners drove them for years and tens of thousands of miles before experiencing any alleged excess oil consumption. The owners say the excessive oil consumption is an inherent defect that is far from ordinary. Even were the court to consider the complaint's implied warranty theory as plausible, it remains untimely.

GM says Mr. Kelly's claim is time barred because the written warranty limited any implied warranty claim to the duration of the express warranty, and the express warranty expired before he purchased the vehicle in 2018. In bolded text, GM's express warranty said as follows: "Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty" [ECF 18-1 at 12-13].

Mr. Kelly rightfully concedes that the law permits the warrantor to limit the duration of an implied warranty. *See* Ind. Code § 26-1-2-316; 15 U.S.C. § 2308(b). He instead argues the limitation wasn't conspicuous. *See* Ind. Code § 26-1-2-316(2); 15 U.S.C. § 2308(b) ("set forth in clear and unmistakable language and prominently displayed on the face of the warranty"); *see also* 15 U.S.C. 2308(c) (rendering any limitation in violation of MMWA ineffective for purposes of both federal and state law). He only argues that the limitation wasn't conspicuous based on Indiana law; he hasn't argued that it wasn't set forth in clear and unmistakable language and prominently displayed on the face of the warranty based on the MMWA.

8

A clause is conspicuous under Indiana law "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Ind. Code § 26-1-1-201(10). "Language in the body of a form is conspicuous if it is in larger or other contrasting type or color." *Id.* "Whether a term or clause is conspicuous or not is for decision by the court." *Id.*

This disclaimer appears in contrasting type—bold. The owners cite *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1084 (Ind. 1993), *abrogated on other grounds*, *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 953-54 (Ind. 2005), for the proposition that when a disclaimer appears on the reverse side of a purchase order that does not require a signature, the court can find that the disclaimer isn't sufficiently conspicuous. But in *Martin*, the court decided that—in addition to the attempted disclaimer appearing on the reverse side of the purchase order without requiring a signature—the disclaimer didn't mention the word merchantability and wasn't conspicuous. *Id.* That isn't the case here. This disclaimer is one of few clauses that is bolded in the warranty. It is conspicuous. *See H.E.D. Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 160370, 9-10 (N.D. Ind. Sept. 29, 2017) (disclaimer "in bold face type, distinct from both the surrounding paragraphs and even some of the sentences in the same paragraph" was conspicuous). Mr. Kelly's claim is time barred.

GM says Mr. Shea's implied warranty claim is time barred because he purchased his vehicle in 2013 but didn't file his complaint until February 2021. Mr. Shea argues his claim was tolled due to GM's fraudulent concealment of the defect.

Under Indiana Code § 34-11-5-1, "[i]f a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." The concealment must be "active and intentional." *U.S. Specialty Ins. Co. v. Daimler Trucks N. Am., LLC*, 2017 U.S. Dist. LEXIS 87428, 6 (S.D. Ind. May 19, 2017). "There must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry." *Id.* (citation omitted). Such concealment will equitably toll the

limitations period, though a party's conduct "must be of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder." *Kenworth*, 134 N.E.3d at 383 (Ind. 2019) (emphases omitted).

Mr. Shea says GM's "trick or contrivance" was issuing a series of technical service bulletins directing its service centers to perform "band-aid" fixes on engines suffering from the oil consumption defect. But Mr. Shea never alleges he ever saw one of these bulletins, or that one influenced him to forego suit. *See id.* at 385 (equitable estoppel applicable when defendants extended warranty period, continued repairs past the original contract obligations, and promised to continue repairs); *see also Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) ("If one party is induced by another, on the faith of an oral promise, to place himself in a worse position than he would have been in had no promise been made, and if the party making the promise derives a benefit as a result of the promise, a constructive fraud exists . . ."); *see also Logan v. Wilkins*, 644 F.3d 577, 582-83 (7th Cir. 2011) ("if the facts pleaded in the complaint establish that a claim is time barred . . . a bare allegation of fraudulent concealment, without more, will not save the claim"); *In re Cook Med., Inc.*, 2020 U.S. Dist. LEXIS 238991, 9 (S.D. Ind. Nov. 13, 2020) (no fraudulent concealment tolling where "no Plaintiff has alleged that the [] Defendants communicated directly with them in a misleading way"). "Mere silence about the alleged defect, in the absence of a fiduciary relationship (which is not alleged here), is insufficient to establish fraudulent concealment." *U.S. Specialty*, 2017 U.S. Dist. LEXIS 87428 at 7. Fraudulent concealment isn't a saving grace today.

Mr. Shea advances class action tolling as an alternative. He cites *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) and *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839 (7th Cir. 2017). In *Collins*, this circuit explained that *American Pipe* "clarified that when federal law supplies the period of limitations, federal courts have the power to toll statutes of limitations." *Collins*, 875 F.3d at 842 (internal quotation marks omitted). In reply, GM notes that Indiana law supplies the period of limitations on the implied

warranty claim. Courts applying Indiana law have refused to expand Indiana limitations law to recognize this doctrine. *See, e.g.*, *In re Urethane Antitrust Litig.*, 663 F. Supp.2d 1067, 1082-83 (D. Kan. 2009) ("in the absence of Indiana authority recognizing the [cross-jurisdictional tolling] doctrine, the Court declines to import a new tolling rule into that state's limitations law"); *In re Vioxx Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 83710, 21-22 (E.D. La. Nov. 8, 2007) ("plaintiffs claims are not saved by *American Pipe* tolling under Indiana law [because] . . . Indiana has not explicitly adopted cross-jurisdictional tolling"). The court sees no avenue in which this doctrine would be adopted in Indiana.

The law bars the implied warranty of merchantability claims by both owners, so the court grants the motion to dismiss.

      C.     *Magnuson-Moss Warranty Act.*

The owners agree that their MMWA claims rise and fall with their express and implied warranty claims. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (MMWA "does not provide an independent basis for liability; it only provides for federal jurisdiction for state claims"). Because the court has dismissed the underlying express and implied warranty claims, the court also dismisses the MMWA claims. Loss of these federal claims leaves the court's subject matter jurisdiction nonetheless intact because the owners have pleaded diversity jurisdiction.

      D.     *Fraudulent Omission.*

The two owners next bring fraudulent omission claims against GM. Indiana law recognizes a claim for actual fraud and a claim for constructive fraud. *See Kapoor v. Dybwad*, 49 N.E.3d 108, 124 (Ind. Ct. App. 2015). "The presence or absence of [an intent to deceive] distinguishes actual fraud from constructive fraud." *Id.* The owners haven't alleged that GM intended to deceive them but rather that GM was aware of the oil consumption defect and had a duty to disclose it to them but didn't [ECF 1 ¶¶ 257-258]. Their fraudulent omission claims sound in constructive fraud.

11

"The elements of constructive fraud are: (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party." *Kapoor*, 49 N.E.3d at 124 (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996)). Rule 9 requires the owners to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). They must state "the who, what, when, where, and how" of their claim. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). GM says they haven't. Specifically, GM contends that the owners haven't alleged whether, where, or how they encountered any specific GM communication, or how they were misled.

The owners allege that GM had knowledge of the defect but failed to disclose it [ECF 1 ¶¶ 102-130, 179-181]. They say GM should have been aware of these claims having litigated similar fraud claims through summary judgment in the *Sloan* action. *See Sloan v. GM LLC*, 2020 U.S. Dist. LEXIS 71982, 66-67, 70-77, 99-112 (N.D. Cal. Apr. 23, 2020) (analyzing fraudulent omission claims under California, New Jersey, North Carolina, and Texas law). "Alleging that a plaintiff . . . relied on certain representation and misrepresentations, without providing further details, represents nothing more than 'mere conclusory statements.'" *See In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 36623, 33 (N.D. Ind. Mar. 7, 2019) (citations omitted); *accord Fifth Third Bank v. Double Tree Lake Estates, LLC*, 2013 U.S. Dist. LEXIS 20234, 32-33 (N.D. Ind. Feb. 12, 2013) (dismissing fraud claim because the plaintiff didn't identify "when or where the alleged actions took place, what Fifth Third specifically did, or how Fifth Third accomplished the allegedly wrongful conduct"); *AAA v. AAA Auto. Parts & Michael Waller*, 2017 U.S. Dist. LEXIS 228745, 9 (S.D. Ind.

June 26, 2017) (dismissing fraud claim because plaintiff didn't "specifically identify any false statement that AAA made to him that he relied upon to his detriment").

Mr. Kelly generally alleges that he "did not receive any notification from GM, either directly or via the dealership, regarding the Oil Consumption Defect, and he could not have reasonably known of the oil consumption defect prior to the engine failure in 2020" [ECF 1 ¶ 29]. He says "[h]ad GM disclosed the Oil Consumption Defect, [he] would not have purchased his 2012 Chevrolet Suburban, or certainly would have paid less for it" [*id.* ¶ 31]. He doesn't allege who at GM took the purported actions or omissions. He doesn't identify when or where the alleged actions took place, what GM specifically did, or how GM accomplished its allegedly wrongful conduct. The complaint includes many allegations discussing specific advertisements from which the oil consumption defect was omitted [*id.* ¶¶ 157-78], but Mr. Kelly doesn't allege that he saw or relied on any such advertisements. Because he hasn't plausibly, much less particularly, pleaded his fraudulent omission claim, the court must dismiss it.

Mr. Shea's allegations fare only slightly better. He says "[p]rior to purchasing his 2013 Sierra, [he] spoke with a sales representative at Expressway Chevrolet Buick GMC, saw commercials for the 2013 Chevrolet Silverado that promoted the truck's reliability and durability, and saw a Monroney sticker on the vehicle at the time of purchase" [*id.* ¶ 37]. Like Mr. Kelly, he says "[h]ad GM disclosed the Oil Consumption Defect, [he] would not have purchased his 2013 Sierra, or certainly would have paid less for it" [*id.* ¶ 39]. Mr. Shea generally acknowledges a sales representative—but he doesn't allege the identity of that sales representative nor does he allege any statements that the representative made to him. He says he saw commercials for the 2013 Chevrolet Silverado, but he purchased a 2013 GMC Sierra. He also says he saw a Monroney sticker, but he doesn't identify any of the information contained on that sticker. Also, because he didn't see that sticker until the time of purchase, it doesn't seem that he relied on it in making his purchase decision. These allegations don't meet the particularity

13

requirement of Rule 9, or plausibly support a fraud claim. Accordingly, the court dismisses Mr. Shea's fraudulent omission claim.

E.      *Indiana Deceptive Consumer Sales Act.*

Mr. Shea and Mr. Kelly claim that GM violated the IDCSA. The IDCSA prohibits the use of deceptive acts in connection with a consumer transaction. Ind. Code § 24-5-0.5-3(a). The owners allege that GM committed incurable deceptive acts [ECF 1 ¶ 222]. An "[i]ncurable deceptive act means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8). A mine-run breach of warranty claim isn't enough. *See Smith*, 468 F. Supp.3d at 1026 (citing *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332-33 (Ind. 2013)). An intent to defraud or mislead is a required element of an incurable deceptive act. *See McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998). The heightened pleading standard of Rule 9(b) applies to these claims. *See Young v. Harbor Motor Works, Inc.*, 2008 U.S. Dist. LEXIS 111909, 17 (N.D. Ind. Dec. 18, 2008).

The owners leave this claim unadorned with the particularity that the law demands. The owners allege that GM mispresented these vehicles in brochures, advertisements, and other marketing materials [ECF 1 ¶¶ 159-76], but not with specifics. The owners never sufficiently allege they relied on these materials in making their purchases. The IDCSA only confers a cause of action on persons "*relying upon* an . . . incurable deceptive act[.]" Ind. Code. § 24-5-0.5-4(a) (emphasis added); *see also Young*, 2008 U.S. Dist LEXIS 111909 at 19 ("Because [the plaintiff] has not identified any deceptive act engaged in specifically by [the defendant], he has failed to met [sic] the factual particularity requirement of Rule 9(b)."); *Jones v. Bridgeport Educ., Inc.*, 2017 U.S. Dist. LEXIS 86204, 10 (N.D. Ind. June 5, 2017) (dismissing IDCSA claim because the plaintiff didn't state any facts to show that "she expressly relied, to her detriment, on any statements or representations made by [the defendant's] phone solicitors"); *Lyons v. Leatt Corp.*, 2015 U.S. Dist. LEXIS 152015, 10 (N.D. Ind. Nov. 10, 2015) (dismissing IDCSA claim because the complaint only provided generalized statements about where

14

representations were made and how the plaintiff relied upon them). Though argued by the parties, whether GM had knowledge of the alleged oil consumption defect at the time of sale is then beside the point. GM must have intended to deceive these owners and done so based on representations that these owners in fact relied on to their detriment. This complaint insufficiently advances such a claim.

  F. *Unjust Enrichment.*

  Mr. Shea and Mr. Kelly bring unjust enrichment claims. They concede that they have pleaded these claims as alternatives to their breach of warranty claims. An "unjust enrichment claim becomes superfluous when neither side disputes the existence of a valid contract, even if it is being alleged in the alternative." *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp.2d 829, 849 (S.D. Ind. 2005). Neither side has disputed the existence or validity of the express warranty in this case. Because the alleged conduct underlying this theory and the express warranty claims is the same, the court dismisses the unjust enrichment claims.

## CONCLUSION

  Accordingly, the court GRANTS GM's motion to dismiss [ECF 17] and DISMISSES this complaint.

  SO ORDERED.

October 14, 2021              *s/ Damon R. Leichty*
                         Judge, United States District Court